IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| A.L.A by and through his next friend LAURA LIBERTY, | ) ) ) |
| and | ) ) |
| LAURA LIBERTY, individually, | ) ) ) |
| Plaintiffs, | ) Case No. 10-5054-CV-SW-SWH ) ) |
| v. | ) ) |
| AVILLA R-XIII SCHOOL DISTRICT, | ) ) |
| Defendant. | ) |

ORDER

Pending before this Court is Avilla R-XIII School District's (hereafter "Avilla") Motion for Summary Judgment. (Doc. #39) For the following reasons, Avilla's motion is granted.

I. BACKGROUND

A.L.A., a minor, receives special educational services from the Avilla School District because of his diagnosis of Down Syndrome. (Doc. #4 ¶12) A.L.A. and Laura Liberty, his court appointed guardian, sued the school district pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 et seq., and Title II of the Americans with Disabilities Act (hereafter "ADA") of 1990, 42 U.S.C. 12131 et seq. Count I of the First Amended Complaint brought by and on behalf of A.L.A. alleges in part:

> 17. During the last two school years, A.L.A. has been confined within a small closet-like room, with no windows or natural light, and has not been allowed to attend class with his nondisabled peers, nor was he provided with a full time qualified teacher.

18. A.L.A. was not provided with the same opportunity as his non-disabled peers to receive a free, appropriate, public education in the least restrictive environment.
19. A.L.A. failed and refused to provide A.L.A. with a proper and legal procedure to file a grievance for resolving disability discrimination complaints.
20. So A.L.A. did not have a proper method for complaining of his treatment by Avilla.

(Doc. # 14 ¶¶17-20) Plaintiff alleges these actions violated the Rehabilitation Act as well as the ADA by discriminating against A.L.A. because of his disability. Plaintiff seeks an order directing Avilla to provide A.L.A. "compensatory education," monetary damages, fees and costs.

Count II brought by Laura Liberty alleges, in part, that

26. Laura has paid for educational materials for A.L.A. that Avilla failed and refused to provide.
27. Further, Avilla is required to provide said educational materials at no cost to Laura.
28. In addition, Laura will be paying for compensatory educational services for A.L.A. because Avilla failed and refused to provide same.
29. Further, Avilla is required to provide said compensatory educational services at no cost to A.L.A. and Laura.

(Doc. # 4 ¶¶ 26-29) Laura Liberty seeks compensation for financial losses, as well as attorney's fees and costs pursuant to the Rehabilitation Act and the ADA. (Doc. #4 at 5)

In support of its motion for summary judgment, Avilla argues that it is entitled to a judgment in its favor because plaintiffs failed to exhaust administrative remedies; Laura Liberty has no standing to pursue a claim individually under the ADA or §504 of the Rehabilitation Act; and the uncontroverted facts show that Avilla did not discriminate against A.L.A. on the basis of his disability. (Doc. #40 at 7-21).

Plaintiffs counter that because Avilla has a policy contrary to the ADA and Rehabilitation Act, exhaustion of administrative remedies was not required. (Doc. # 44 at 9-14) Further, Laura

Liberty contends that even though she is not disabled she has properly pled a claim for relief in Count II. (Doc. # 44 at 7-9)  Finally, plaintiffs deny that summary judgment would be appropriate for the reason that A.L.A. has shown that Avilla discriminated against him by acting in bad faith and with gross misjudgments in failing to provide him with reasonable accommodations. (Doc. # 44 at 16-17)

## II. APPLICABLE LEGAL STANDARDS

The first issue before the Court is the applicable legal standard.  Defendant's motion is styled "Motion for Summary Judgment."  However, the suggestions in support of the motion are styled "Defendant Avilla R-III School District's Memorandum in Support of its Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment."  (See doc. # 40 at 1)  Although setting forth allegedly undisputed facts, the memorandum also includes a discussion of the legal standard by which the court may grant a motion for judgment on the pleadings.[1]  Given that the motion is for summary judgment and that the arguments of both Plaintiffs and Defendant refer to factual issues outside the pleadings, the Court will consider the issues pursuant to the summary judgment standard.

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The moving party has the burden of showing that there is no genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514,

---

[1] A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss for failure to state a claim.  Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009), *cert. denied*, __ U.S. __, 130 S.Ct. 3507, 177 L.Ed.2d 1092 (2010).  Thus, the court views "all facts pleaded by the nonmoving party as true and grant[s] all reasonable inferences in favor of that party."  Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008).

91 L.Ed.2d 202 (1986). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. In determining whether a fact is material, courts must determine what facts under the substantive claim are necessary to sustain the cause of action. Anderson, 477 U.S. at 248.

If the moving party has met their initial burden, then the burden shifts to the nonmoving party to produce specific evidence to demonstrate the existence of a "genuine issue for trial." Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." Mirax Chem. Products Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991).

### III. DEFENDANT'S UNCONTROVERTED FACTS[2]

1. Defendant Avilla R-XIII School District (hereafter "Avilla") is a public school district located in Jasper County, Missouri. (Defendant's Uncontroverted Fact (hereafter "DUF") # 1)

2. Plaintiff A.L.A. is a minor who currently resides in the City of Reeds, Missouri with his grandparents. (DUF # 2)

3. Plaintiff A.L.A. has been enrolled in the District since his kindergarten year and is currently enrolled in the District as a sixth grade student. (DUF # 3)

4. Plaintiff A.L.A. receives special education services through the District as he has a

---

[2] The following facts were admitted by the plaintiffs.

medical diagnosis of Down Syndrome. (DUF # 4)

5. On September 17, 2002, A.L.A.'s IEP team, including Plaintiff Laura Liberty, convened to review the initial evaluation report of A.L.A. to determine his eligibility to receive special education and related services pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §1400, et seq. (hereafter "IDEA").(DUF # 5)

6. On September 17, 2002, A.L.A.'s IEP team, including Plaintiff Laura Liberty, determined that A.L.A. was eligible and qualified to receive special education and/or related services under the IDEA as a young child with a developmental delay. (DUF # 6)

7. Avilla provided Plaintiff A.L.A. with speech/language, occupational therapy and physical therapy services pursuant to the individualized education program (hereafter "IEP") developed on September 17, 2002. (DUF # 7)

8. Plaintiff Laura Liberty, as A.L.A.'s legal guardian, attended A.L.A's IEP team meetings and considered herself a full member of the IEP team who fully participated at IEP team meetings. Laura Liberty also knew that she had the right to suggest specific revisions and modifications of A.L.A.'s IEPs, and in fact, did so from time to time. (DUF # 8)

9. Plaintiff Laura Liberty received copies of the IDEA Procedural Safeguards following each IEP team meeting she attended and has reviewed those safeguards. (DUF # 9)

10. IDEA Procedural Safeguards are issued through the Missouri Department of Elementary and Secondary Education and advise students and their guardians of their rights to due process and other rights with respect to special education. (DUF # 10)

11. Following the development of A.L.A.'s initial IEP on September 17, 2002, A.L.A.'s IEP team, including Laura Liberty, met on September 12, 2003; September 13, 2004, and September 1, 2005 to review and revise A.L.A.'s IEP as needed. (DUF # 11)

12. On September 16, 2005, A.L.A.'s IEP team, including Laura Liberty, convened to review A.L.A.'s IEP. After considering the appropriateness of A.L.A.'s instruction and services, the IEP team revised A.L.A.'s IEP so that he would receive direct one-on-one instruction from his paraprofessional in conjunction with his regular and special education teachers. Plaintiff Laura Liberty was provided with a Notice of Action at the meeting which detailed the action A.L.A.'s IEP team had taken. (DUF # 12)

13. Plaintiff Laura Liberty understood the modifications to A.L.A.'s IEP and agreed to said changes as reflected on the September 16, 2005, Addendum to A.L.A's IEP.

5

(DUF # 13)

14. Following the September 16, 2005 IEP meeting, A.L.A.'s IEP team, including Laura Liberty, convened on December 20, 2005; January 10, 2006; March 13, 2006; January 5, 2007; May 4, 2007; January 16, 2008; April 30, 2008; January 15, 2009; February 27, 2009; March 27, 2009; September 28, 2009 and March 29, 2010. (DUF # 14)

15. During the 2008-09 school year, A.L.A.'s third grade year, Laura Liberty requested that A.L.A.'s IEP team amend his IEP so that the one-on-one instruction would be delivered in some place other than the small room designated for that instruction. A.L.A.'s IEP team determined that such change was not appropriate for A.L.A. and declined to adopt the requested change. (DUF # 15)

16. Following her request(s) that the A.L.A.'s IEP team amend his IEP so that A.L.A.'s one-on-one instruction would be delivered in some place other than the location designated for that instruction, Laura Liberty received a Notice of Action informing her of the IEP team decision(s). She also received a copy of IDEA Procedural Safeguards on more than one occasion. (DUF # 16)

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

#### 1. Exhaustion of Administrative Remedies Under the IDEA

While plaintiffs chose to sue under the Rehabilitation Act and the ADA, a third statutory enactment, the Individuals with Disabilities Education Act, 20 U.S.C. §§1400, *et seq.* (hereafter "IDEA"), must also be considered. Courts have generally noted that section 504 of the Rehabilitation Act, the IDEA and the ADA all provide similar protections for a disabled student:

> The IDEA and Section 504 of the Rehabilitation Act provide nearly equivalent requirements. The IDEA provides an affirmative duty to provide education, whereas the Rehabilitation Act prohibits discrimination against the disabled. "There appear to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition." Similarly, the ADA also prohibits discrimination against the disabled. Like Section 504, ADA claims can be based on the discriminatory effect on disabled children of seemingly neutral practices and do not require a finding of intentional discrimination.

6

Swope v. Central York School District, 2011 WL2471518, at *3 (M.D. Pa. 2011) (citations omitted).

In discussing the IDEA, the Eighth Circuit explained that:

> The IDEA provides access to a free appropriate public education (FAPE)-a "basic floor of opportunity" so that a child with disabilities has access to an individually designed education. See Yankton Sch. Dist. v. Schramm, 93 F.3d 1369, 1372 (8th Cir.1996), citing Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 201, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); see also 20 U.S.C. §§ 1400(d)(1)(A), 1401(9).

Stringer v. St. James R-1 School Dist., 446 F. 3d 799, 802-803 (8th Cir. 2006). In providing a free appropriate public education (herafter "FAPE"), school districts are required to design and implement an individualized educational program (hereafter "IEP") for each student with a disability. 20 U.S.C. § 1414(d). The IEP is a "'comprehensive statement of the educational needs of [the] handicapped child and the specially designed instruction and related services to be employed to meet those needs.'" C.B. ex rel. B.B. v. Special School Dist. No. 1, 636 F.3d 981, 989 (8th Cir. 2011) (quoting School Committee of Burlington v. Department of Education, 471 U.S. 359, 368,105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985)).

Citing section 1415(l) of the IDEA, Defendant argues that even though Plaintiffs have chosen to sue under Section 504 of the Rehabilitation Act and the ADA, they must exhaust the administrative remedies provided by the IDEA since the complaint raises issues concerning whether A.L.A. received a FAPE. That section of the IDEA setting forth the requirement that administrative remedies must be exhausted before filing suit provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections*

7

> *(f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.[3]*

20 U.S.C. §1415(l) (emphasis added). Courts that have considered section 1415(l) have found that the IDEA's exhaustion requirement applies equally to relief available under other statutes, such as the ADA and the Rehabilitation Act, if the relief sought under those statutes would also be available under the IDEA. See Payne v. Peninsula School Dist., 653 F.3d 863, 875 (9th Cr. 2011)(courts should look at the complaint's prayer for relief and determine whether the relief sought is also available under the IDEA); Kutasi v. Las Virgenes Unified School Dist., 494 F.3d 1162, 1163 (9th Cir.2007) ("We reaffirm the principle that plaintiffs must exhaust administrative remedies before filing a civil lawsuit if they seek relief for injuries that could be redressed to any degree by the IDEA's administrative procedures."). As the Ninth Circuit explained, section 1415(l) requires exhaustion in three situations: (1) when a plaintiff seeks an IDEA remedy or its functional equivalent; (2) when a plaintiff seeks a prospective injunctive relief to alter an IEP or the educational placement; and (3) where a plaintiff is seeking to enforce rights that arise as a result of a denial of a FAPE whether pled as an IDEA claim or under another statutory provision. Payne, 653 F 3d at 875.

2. Do Plaintiffs Complaints Relate to a FAPE?

Plaintiffs argue that their claim is that Avilla failed to protect A.L.A. from unlawful discrimination, a claim wholly unrelated to the IEP process under the IDEA. (Doc. # 44 at 14-15; doc. #4 ¶14) In the complaint, A.L.A. contends that he was "confined within a small closet-like

---

[3] 20 U.SC. §1415(f) sets forth detailed requirements for a due process hearing when a complaint has been made concerning the provision of a free appropriate education under subsections (b)(6) and (k) of the IDEA. 20 U.SC. §1415(g) explains that if the due process hearing is conducted by a local educational agency any party aggrieved by the findings and decision may appeal to the State educational agency.

8

room, with no windows or natural light, and has not been allowed to attend class with his non-disabled peers, nor was he provided with a full time qualified teacher." (Doc. #4 ¶17) He further alleges that he was "not provided with the same opportunity as his non-disabled peers to receive a free, appropriate, public education in the least restrictive environment." (Doc. #4 ¶18) A.L.A. asks the Court to "[o]rder Avilla to provide A.L.A. compensatory education" and award "monetary damages" caused by the violation of his rights under the Rehabilitation Act and the ADA. (Doc. #4 at 3-4)

As discussed earlier, the IDEA requires that the school district have in place an IEP for a child with a disability at the start of each school year. 20 U.S.C. §1414(d)(2)(A). An IEP includes, among other things, "a statement of the special education and related services and supplementary aids and services . . . to be provided to the child . . . ." 20 U.S.C. §1414(d)(1)(A)(i)(IV). The allegations by A.L.A. concerning his educational program are exactly the type of issues addressed in an IEP. Thus, Plaintiffs are mistaken in their assertion that their claims are wholly unrelated to the IEP process. In fact, Laura Liberty's own actions belie Plaintiff's assertion. Laura Liberty brought her request that is now the subject of the instant action to the IEP team meeting for the 2008-09 school year. (Uncontroverted Fact #15, *supra*) The IEP team, however, did not feel that a change in the IEP was appropriate and declined to adopt Laura Liberty's request. (Uncontroverted Fact #15, *supra*) Laura Liberty was then provided with a copy of the IDEA's *Procedural Safeguards Notice*. (Uncontroverted Fact #16, *supra*) This Court, therefore finds that because A.L.A. allegations raise his ability to receive a FAPE, A.L.A. must exhaust his administrative remedies pursuant to section §1415(l) prior to pursuing the instant action.

Furthermore, this Court rejects any suggestion that Laura Liberty's request for monetary

9

damages for Avilla's failure to provide the necessary educational materials is not a cognizable claim under IDEA and therefore she is not required to exhaust administrative remedies. While the Eighth Circuit in Heidemann v. Rother, 84 F.3d 1021, 1033 (8th Cir. 1996), found that general and punitive damages are not available under the IDEA, the monetary damages sought by Laura Liberty for failure to provide necessary educational materials are not considered general and punitive damages. The United States Supreme Court has found that reimbursement for expenses which should have been covered under an IEP are not considered damages. School Committee of Town of Burlington, Mass. v. Department of Educ. Mass., 471 U.S. 359, 371, 105 S.Ct. 1996, 2003, 85 L.Ed.2d 385 (1985) (involving the Education of the Handicapped Act, which was the foreruneer to the IDEA). Courts have determined that reimbursement for services and material that should have been provided under an IEP fall under the purview of the IDEA and thus exhaustion of administrative remedies are required in such circumstances. Payne., 653 F.3d at 875; Polera v. Board of Educ. of Newburgh Enlarged City School Dist, 288 F.3d 478, 488 (2nd Cir. 2002). Therefore, because Laura Liberty's request for monetary damages relates to the alleged failure of Avilla to provide educational materials, her claim could have been addressed through the administrative remedies pursuant to the IDEA and her claim is also subject to the exhaustion requirement.

      3.      <u>Does An Exception to the Exhaustion Requirement Exist?</u>

There are, however, limited instances where plaintiffs may be excused from exhausting administrative remedies. The exceptions to the exhaustion requirement occur when "(1) exhaustion would be futile; (2) exhaustion would fail to provide adequate relief; [or] (3) 'an agency has adopted a policy or pursued a practice of general applicability that is contrary to law.'" Megan C. v. Independent School Dist. No. 625, 57 F.Supp.2d 776, 789 (D. Minn. 1999) (quoting Association for

Community Living in Colorado v. Romer, 992 F.2d 1040, 1043-44 (10th Cir. 1993)). In the instant case, Plaintiffs assert that exhaustion was not required under the third exception because Avilla had adopted a policy that was contrary to law.

In support of their argument, Plaintiffs rely on a report created by the United States Department of Education, Office of Civil Rights (hereafter "OCR"), after OCR investigated a complaint by another Avilla student. (Doc. #44-1 & 44-2)[4] The report specifically addressed concerns regarding a student other than A.L.A., but did include a generalized finding that Avilla's existing grievance procedure was inadequate for "other types of disability discrimination complaints that are not addressed by the *Procedural Safeguards Notice* [which discusses the policies and procedures in dealing with complaints about the implementation of students IEPs under the IDEA]." (Doc. #44-2 at 1)

Plaintiffs' reliance on this report is misplaced for several reasons. First, in responding to Defendant's motion for summary judgment, Plaintiffs admit Defendant's uncontroverted facts numbered 1-16. (See doc. # 44 at 4-5) Plaintiffs, however, provided no additional statement of facts which they claimed were uncontroverted or upon which they were relying in opposing the motion for summary judgment.[5] Despite this failure, in the argument section, Plaintiffs refer to the report

---

[4] Avilla has moved to strike the report arguing that it contains inadmissible hearsay. (Doc. #56) Because this Court finds the report to be irrelevant to its determination in the instant matter, Avilla's request is denied as moot.

[5] Local Rule 56.1(a) requires that "[s]uggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists." Plaintiffs have failed to comply with this rule as their factual assertions are scattered in the body of their brief.

11

issued by the OCR, the deposition of Deon Duncan as well as interrogatory answers of Avilla[6]. (See doc. # 44 at 9-14).  Plaintiffs have, therefore, failed to comply with local rule 56.1(a) by failing to specifically list "material facts as to which the party contends a genuine issue exists."

Nevertheless, and more importantly, the exception relating to policies and practices that are contrary to law is rooted in the legislative history of the IDEA.  Association for Community Living in Colorado v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993).  As such, those policies and practices must relate to the goals of IDEA, which is to guarantee a FAPE for children with disabilities.  20 U.S.C. §1412(a)(1)(A).  The policy identified by Plaintiffs as contrary to law relates to the procedural application of grievances filed under the Rehabilitation Act and the ADA[7]– not the IDEA. (Doc. #44 at 10-11) The OCR document relied upon does not involve an investigation into the adequacy of the procedural safeguards contained in the IDEA and implementing regulations. Instead, the report focuses on whether the policy conforms to the requirements of the Rehabilitation Act. (Doc. #44-1 at 19)  The OCR document specifically states that the OCR is responsible for enforcing Section 504 of the Rehabilitation Act and Title II of the ADA. (Doc. #44-1 at 5)  Thus, the

---

[6] It does not appear the interrogatories or the answers were provided to the Court as an exhibit. Local Rule 56.1(a) requires that when the facts referred to are contained in a document such as an interrogatory, the document or the relevant portion thereof must be attached to the pleading.

[7] To the extent that A.L.A raises a claim that Avilla failed to put into place the proper procedures for handling discrimination complaints under the Rehabilitation Act or the ADA, that allegation does not state a claim for relief.  There is no independent cause of action under either the Rehabilitation Act or the ADA for failing to provide adequate procedures.  Cf. Nelson v. Greenspan, 163 F.Supp.2d 12, 18 (D. D.C. 2001) (finding no independent cause of action under Title VII for mishandling a discrimination complaint); see also Lewis v. School Dist. #70, 523 F.3d 730, 744 n.9 (7th Cir. 2008) (noting that "[b]ecause [plaintiff's] complaint never alleged a due process claim or any other procedural cause of action, [the Court will] construe her intimations that the school board failed to follow the proper procedure as relevant solely to her FMLA claim, not as an independent cause of action.")

12

policy under investigation by the OCR, which related to the implementing regulations under the Rehabilitation Act and the ADA, has no impact on the handling of complaints under the IDEA, and provides no basis for excusing exhaustion of administrative remedies under the IDEA. Significantly, Laura Liberty acknowledged that on several occasions she was provided with a copy of a document entitled Procedural Safeguards Notice, Part B of the Individuals with Disabilities Education Act (IDEA) (See Undisputed Facts 9, 10 and 16, *supra*) This document sets forth in detail the process by which a due process complaint can be filed under the IDEA and even provides access to model forms to be used in registering a complaint. (See doc. # 40-5 at 72-75) Plaintiffs have made no claim that the policies and procedures of the IDEA as explained in the pamphlet provided to Laura Liberty were inadequate or contrary to law. Thus, the identified policy does not fit into the exception to the exhaustion requirement for policies and practices that are contrary to law.

Furthermore, even assuming that the policy violations found in connection with another student's complaints under the Rehabilitation Act and the ADA, could somehow be construed as affecting the goals established in the IDEA, the policy violation is not the type of policy that vitiates the need to exhaust remedies. In Hoeft v. Tucson United School Dist., 967 F.2d 1298 (9th Cir. 1992), the Ninth Circuit thoroughly discussed the exception relating to policies and practices of general applicability that are contrary to law. The Hoeft Court noted that the cases that fall under this exception are cases that "involve statutory violations so serious and pervasive that basic statutory goals are threatened – violations on a qualitatively different scale than those alleged here." Hoeft, 967 F.2d at 1304 (the violation alleged in Hoeft was the failure to offer extended school year services to disabled students). The court went on to state that even though the plaintiffs alleged procedural violations of IDEA, such violations did not "effectively deprive[] plaintiffs of an administrative

13

forum." Hoeft, 967 F.2d at 1304. Plaintiffs in the instant case have not been denied an administrative forum to hear their complaints under the IDEA. In fact, Plaintiffs recognize that the procedural process established in conformance with the IDEA was available. (Doc. #44 at 11 (noting the desire of students to have their discrimination complaint "handled internally by Avilla without the necessity of going through an outside and expensive process.")) Therefore, Plaintiffs' failure to exhaust administrative remedies is fatal to the instant action.

B.  Laura Liberty's Standing

With regard to Avilla's contention that Laura Liberty lacks standing, this Court notes that there appears to be a split in the district with regard to whether parents have standing in their own right under the Rehabilitation Act and the ADA. See M.W. ex rel. Williams v. Avilla R-XIII School District, 2011 WL 3354933 (W.D. Mo. 2011) (finding that the parents lacked standing to pursue claims under §504 and the ADA because neither statute "contemplate[s] damage claims by individuals who do not themselves have disabilities nor have suffered discrimination based on their own disabilities."); but see K.F. v. Francis Howell R-III School Dist., 2008 WL 723751, at *7 (E.D. Mo. 2008) (finding that parents have standing under §504 and the ADA because of the "the 'particular and personal' interest parents have in preventing discrimination against their child."). For the reasons stated in subsection A, *supra*, this Court need not enter the debate because the failure to exhaust administrative remedies requires dismissal of Laura Liberty's complaint.

III. Conclusion

Based on the foregoing, it is

ORDERED that Defendant Avilla R-XIII School District's Motion for Summary Judgment (Doc. #39) is GRANTED. It is further

14

ORDERED that Defendant Avilla R-XIII School District's Motion to Strike (Doc. #55) is DENIED AS MOOT.

          /s/ *Sarah W. Hays*

          SARAH W. HAYS

          UNITED STATES MAGISTRATE JUDGE